WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Kristine Ann Mullen,
Plaintiff,
v.
Annette Hernandez-Parkhurst, et al.,
Defendants.

No. CV-26-00095-TUC-JGZ

**ORDER**

This medical malpractice action was filed in Pima County Superior Court. (Doc. 1-4.) The United States removed the action under 42 U.S.C. § 233(c) and certified that Drs. Hernandez-Parkhurst, Woodard, and Rios were acting within the scope of their deemed Public Health Service employment at the time of the alleged acts or omissions. (Doc. 1.) Based on that certification, the United States was substituted as the defendant for those physicians, giving this Court subject matter jurisdiction.

Pending before the Court are Plaintiff's Motion to Remand with Associated Requests for Limited Discovery and a 42 U.S.C. § 233 Scope Hearing (Doc. 18) and the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 4). For the following reasons, the Court will deny Plaintiff's Motion to Remand and related requests for limited discovery and a scope hearing, grant the United States' Motion to Dismiss, and remand the remaining state-law claims to Pima County Superior Court.

## I. Background

Plaintiff's First Amended Complaint names, among others, Drs. Annette

Hernandez-Parkhurst, Crystalynn Woodard, and Jose Rios, and alleges medical negligence arising from OB/GYN care provided during Plaintiff's July 2023 hospitalization at Tucson Medical Center ("TMC") and an August 2 postoperative visit. (Doc. 18-2 at 2, 4–7.)

On February 13, 2026, the United States removed the action, asserting that Drs. Hernandez-Parkhurst, Woodard, and Rios were employees of El Rio Santa Cruz Neighborhood Health Center ("El Rio"), a federally deemed entity, and were acting within the scope of their deemed Public Health Service employment when the alleged acts or omissions occurred. (Doc. 1 at 1–2.) The United States therefore contends that it is the proper defendant for the covered claims and that Plaintiff's exclusive remedy is an action under the Federal Tort Claims Act ("FTCA"). (*Id.* at 2; Doc. 23 at 1–2.)

The United States has moved to dismiss the claims against it because Plaintiff failed to exhaust her administrative remedies under the FTCA before filing suit. (Doc. 4.) Plaintiff opposed the dismissal, arguing that the Court first had to determine whether the United States was properly substituted for the individual physicians and, if so, which physicians and medical-negligence claims were covered. (Doc. 17 at 1–2.)

Plaintiff later filed the pending Motion to Remand, arguing that the physicians' treatment of her as a nonpatient at TMC and during the later postoperative visit at El Rio fell outside the scope of the physicians' deemed Public Health Service employment. (Doc. 18.) Plaintiff seeks limited discovery, a scope hearing, and remand of the action.

## II. Discussion

Plaintiff has not met her burden of disproving the Attorney General's certification. The certification is prima facie evidence that the physicians acted within the scope of their deemed federal employment. 28 U.S.C. § 2679(d); *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995). When challenged, the Court reviews the scope determination de novo. *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991). "The party seeking review bears the burden of presenting evidence and disproving the Attorney General's certification by a preponderance of the evidence." *Billings*, 57 F.3d at 800.

As the Ninth Circuit has explained, "mere deeming status does not guarantee

coverage." *Blumberger v. Tilley*, 115 F.4th 1113, 1128 (9th Cir. 2024). Rather, "[o]nly acts and omissions related to the grant-supported activity of entities are covered" and acts or omissions arising from services provided to nonpatients are covered only if the Secretary has approved the particular activity or arrangement or the services "fit[] squarely within" one of the categories the Secretary has already determined to be covered without a particularized application. 42 C.F.R. § 6.6(d), (e)(4); *see* Health Res. & Servs. Admin. (HRSA), HHS, *Federal Tort Claims Act Health Center Policy Manual* 9 (July 21, 2014), https://perma.cc/DP5S-HH8N (HRSA Manual).

The parties do not dispute that Drs. Hernandez-Parkhurst, Woodard, and Rios were employed by El Rio or that El Rio was a deemed Public Health Service entity during the relevant period. They dispute whether the physicians acted within the scope of § 233 coverage. The record is sufficient to resolve that issue without further discovery or an evidentiary hearing. As explained below, the July TMC care falls within 42 C.F.R. § 6.6(e)(4)(ii), Plaintiff received the August 2 care as an El Rio patient, and the physicians acted within the scope of their employment with El Rio.[1] Accordingly, the care at issue falls within § 233, and the United States was properly substituted for Drs. Hernandez-Parkhurst, Woodard, and Rios.

**A. The July 23–29 TMC Care**

The care provided by Drs. Hernandez-Parkhurst, Woodard, and Rios during Plaintiff's July 23–29 hospitalization at TMC falls within § 233 coverage. Because Plaintiff was not an El Rio patient during that hospitalization,[2] the care is covered only if it falls within an approved category of services to nonpatients. See 42 U.S.C. § 233(g)(1)(B); 42 C.F.R. § 6.6(e)(4). The regulations identify limited circumstances in which services to nonpatients are covered without a particularized determination from HHS. If the activity or arrangement "fits squarely" within one of those descriptions, no separate determination

[1] Federal law governs whether the July TMC care and August 2 El Rio visit fall within the statutory and regulatory limits of El Rio's deemed status, while Arizona law governs the scope of employment inquiry. *See* 28 U.S.C. § 1346(b)(1); *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163 (9th Cir. 2005).

[2] Each party identifies Plaintiff as a nonpatient of El Rio during her July 23–29, 2023 hospitalization at TMC. (*See* Doc. 23 at 2; Doc. 25 at 2 n.1.)

is required; otherwise, the health center must seek a particularized coverage determination. 42 C.F.R. § 6.6(e)(4); *see O'Brien v. United States*, 56 F.4th 139, 149 (1st Cir. 2022).

For hospital-related activities, § 6.6(e)(4)(ii) extends coverage where "[p]eriodic hospital call or hospital emergency room coverage is required by the hospital as a condition for obtaining hospital admitting privileges" and "there [is] documentation for the particular health care provider that this coverage is a condition of employment at the health center." Because El Rio did not obtain a particularized determination for the TMC care, the question is whether the arrangement fits squarely within that regulatory description.[3]

The record establishes that it does. The United States submitted El Rio's HRSA deeming application and Notice of Deeming Action; grant materials identifying OB/GYN services, hospital admissions, and hospital call activities as part of El Rio's approved scope of project; the physicians' employment agreements, credentialing policies, collective bargaining agreement, and TMC Medical Staff Bylaws; contractual agreements between El Rio and TMC governing hospital based OB/GYN services; declarations from Ramona Durrer, Douglas Spegman,[4] and the treating physicians; the physicians' Forms W-2 showing that El Rio alone compensated them; the July and August 2023 TMC OB/GYN

[3] Plaintiff contends that the United States' failure to challenge Exhibit 2 expressly permits the Court to treat its proposed three-step methodology as conceded. (Doc. 25 at 2 n.1.) The Court declines to do so. Although the methodology correctly recognizes that employment by a deemed entity does not alone establish coverage and that a particularized determination may be required when an activity does not fit within § 6.6(e)(4), its second step imposes an additional requirement not found in § 6.6(e)(4)(ii). Specifically, Plaintiff would limit coverage to services performed during the precise hours of a hospital scheduled call shift and exclude routine inpatient care or treatment provided outside those hours. The regulation does not impose that precise shift requirement. The Court therefore applies the statutory and regulatory text independently rather than adopting Plaintiff's proposed methodology.

[4] Plaintiff asks the Court to strike the declarations of Ramona Durrer and Douglas Spegman, M.D. She argues that Durrer's statements about the physicians' call status conflict with Exhibit 14, which she contends shows that the physicians were not on mandatory call shifts on the dates of the alleged negligence and contains unresolved ambiguities regarding shift designations, acronyms, redactions, color coding, and its version date. (Doc. 25 at 3–7.) She further argues that Spegman cannot authenticate or explain TMC's bylaws because he is not TMC's records custodian and had no role in drafting them. (*Id.* at 4.) These objections concern weight, not admissibility. Durrer and Spegman identify their positions and familiarity with the relevant records and processes. (Doc. 23-2 at 2; Doc. 23-3 at 2.) A witness need not be an institution's official records custodian to authenticate a document based on personal knowledge. *See* Fed. R. Evid. 602, 901(b)(1); *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990). The request to strike is denied.

call schedules; and El Rio's billing records. (Docs. 23-2, 23-3.) Together, that evidence shows that TMC required periodic call coverage as a condition of admitting privileges and that El Rio documented participation in that coverage as a condition of the physicians' employment. The arrangement therefore fits squarely within § 6.6(e)(4)(ii), and no particularized coverage determination was required.

Plaintiff argues that the call calendar does not establish coverage for each physician on each date of the alleged negligence.[5] (Doc. 25 at 4–7.) Specifically, she contends that Dr. Hernandez-Parkhurst was not scheduled for call when she performed the July 24 surgery, Dr. Rios was not scheduled for call when he evaluated Plaintiff on July 27, and Dr. Woodard was not scheduled for call when she evaluated Plaintiff on July 28 and 29. (*Id.*) Plaintiff therefore maintains that the Court must determine coverage separately for each physician, date, and alleged act or omission.

Plaintiff's argument imposes a requirement not found in § 6.6(e)(4)(ii). The regulation requires that periodic hospital call or emergency room coverage be imposed by the hospital as a condition of obtaining admitting privileges and that the particular provider's participation in that coverage be documented as a condition of employment at the health center. It does not require the United States to establish that each alleged act or omission occurred during the precise hours reflected on a call calendar. The relevant question is whether the physicians provided the challenged care as part of the qualifying hospital call arrangement, not whether every individual service corresponds to a separate calendar entry.

The record establishes that connection. El Rio billed for the care they provided during that coverage (Doc. 23-2 at 288–292), and the declarations state that Drs. Hernandez-Parkhurst, Rios, and Woodard provided periodic call coverage at TMC (Doc.

---

[5] Plaintiff identifies what she characterizes as factual inaccuracies in the United States' description of the call schedules. (Doc. 25 at 4–7.) The Court has independently reviewed the calendars and does not adopt any suggestion that each physician was necessarily working a specifically scheduled call shift on every date relevant to Plaintiff's allegations. The Court instead concludes that the calendars, considered together with the declarations and other record evidence, do not disprove that the challenged care was provided pursuant to the qualifying hospital call arrangement.

23-2 ¶¶ 12–15; Doc. 23-3 ¶¶ 2–4). TMC's bylaws also required the physicians, as members of the Active Staff, to provide specialty coverage for the emergency department, provide care for unassigned patients, accept inpatient consultations, and perform assigned duties. (Doc. 23-3 at 96–98.)

Plaintiff's interpretation of the call calendar does not rebut that evidence. Plaintiff acknowledges that the calendar does not identify the pertinent shift intervals and raises questions concerning its formatting, color coding, entries, and identification of daytime and evening responsibilities. (Doc. 25 at 4–5.) Those asserted ambiguities do not establish that any physician provided the challenged care outside the qualifying hospital call arrangement. Nor has Plaintiff submitted contrary evidence showing that the physicians treated her independently of their El Rio employment or TMC call responsibilities. Plaintiff therefore has not disproved by a preponderance of the evidence that the July 23–29 care was provided pursuant to the arrangement described in § 6.6(e)(4)(ii).

Accordingly, the Court concludes that the July 23–29 TMC care falls within § 233 coverage.

**B. The August 2 El Rio Visit**

Plaintiff's August 2 visit also falls within § 233 coverage. Section 233 distinguishes between services provided to "patients of the entity" and services provided to individuals who are not patients of the entity. 42 U.S.C. § 233(g)(1)(B). Although the statute does not separately define the phrase "patients of the entity," its text requires a relationship between the individual and the particular deemed health center itself.

The question is therefore whether Plaintiff was a patient of El Rio at the time of the August 2 visit. The record establishes that she was. Unlike the July TMC hospitalization, the August 2 visit occurred at El Rio OB/GYN Associates, where Dr. Hernandez-Parkhurst provided outpatient gynecological care to Plaintiff as an El Rio physician. (Doc. 18-2 ¶ 29.) El Rio's 2023 grant application listed obstetrical and gynecological care as required services and identified El Rio OB/GYN Associates as a physical service site. (Doc. 23-2 at 182, 187, 3 ¶ 3.) HHS also issued El Rio a Notice of Deeming for the 2023 coverage period.

(*Id.* at 204–205, 3 ¶ 4.) Dr. Hernandez-Parkhurst was employed and compensated by El Rio (*Id.* at 208–209, 260–261, 3 ¶¶ 5, 9), and El Rio billed for the care provided during that encounter (*Id.* at 288–292, 3 ¶ 5). These facts establish that El Rio furnished the August 2 care through its own outpatient practice.

The care fell within the gynecological services identified in El Rio's grant application, was provided by an El Rio employed physician at an approved El Rio service site, and was billed by El Rio. Nothing in the record indicates that Dr. Hernandez-Parkhurst provided the services independently or on behalf of TMC or another third party. Plaintiff therefore received the August 2 services as a patient of the deemed entity within the meaning of § 233(g)(1)(B)(i). The fact that the need for staple removal arose from her earlier hospitalization at TMC does not alter the capacity in which El Rio and Dr. Hernandez-Parkhurst provided the August 2 care.

In arguing that the August 2 visit was a continuation of allegedly non-covered TMC treatment, Plaintiff relies on *Oh v. Dignity Cmty. Care*, No. CV 23-7054-GW-AGRx, 2026 U.S. Dist. LEXIS 19401 (C.D. Cal. Jan. 29, 2026). In *Oh*, the plaintiff was a preexisting patient of the deemed health center who later received continuing inpatient care from that entity at a hospital. *Id.* at *15–18. The court held that she remained a patient of the deemed entity despite the change in treatment location, emphasizing that the critical question was whether she was a patient of that entity, not merely where the services were rendered. *Id.* The court did not adopt the broader proposition that an individual becomes a patient of a deemed entity merely because the entity provides medical services to the individual or because the services are rendered at an approved service site. *Id.* at *15–17.

*Oh* therefore does not support Plaintiff's argument that the August 2 care fell outside § 233 merely because it followed treatment Plaintiff received at TMC. (Doc. 25 at 8–9.) *Oh* addressed the continuation of an existing patient relationship, not the formation of a new one. Here, the objective circumstances of the August 2 encounter independently establish that Plaintiff received care through El Rio's outpatient practice as an El Rio patient. The fact that the need for postoperative treatment arose from Plaintiff's earlier

hospitalization does not alter the entity through which the later services were provided. Moreover, the Court has concluded that Plaintiff's July 23–29 TMC care was covered, so the factual premise of Plaintiff's continuation argument is absent.

Plaintiff's equitable-estoppel argument also fails. "A party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence." *Morgan v. Gonzales*, 495 F.3d 1084, 1092 (9th Cir. 2007). Plaintiff does not allege that the United States affirmatively misrepresented or concealed El Rio's deemed status. Her allegation that the treating physicians failed to disclose possible FTCA coverage is therefore insufficient. Moreover, § 233 coverage turns on whether the statutory and regulatory requirements are satisfied, not on whether Plaintiff knew that El Rio and its physicians were deemed federal employees.

The Court also declines to treat these theories as conceded based on the United States' failure to respond to them separately. The United States opposed remand and maintained that the August 2 visit was covered under § 233. Its failure to address every subsidiary argument individually does not relieve the Court of independently applying the governing law to the record.

Accordingly, the Court concludes that the August 2 El Rio visit falls within § 233 coverage.

**C. Scope of Employment Under Arizona Law**

The physicians acted within the scope of their employment with El Rio. "The scope of employment inquiry ... is defined by the applicable state law of respondeat superior." *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163 (9th Cir. 2005); *see also* 28 U.S.C. § 1346(b)(1). Arizona law therefore governs this inquiry.

Under Arizona law, an employee acts within the scope of employment when the employee performs work assigned by the employer or engages in conduct subject to the employer's control or right of control. *See Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 59, 280 P.3d 599 (2012). Conduct falls outside the scope of employment when the employee pursues an independent course of action that does not further the employer's

purposes and is not subject to the employer's control or right of control. *Id.* at 58 ¶ 13.

The record establishes that Drs. Hernandez-Parkhurst, Woodard, and Rios acted within the scope of their El Rio employment when providing the care at issue. El Rio employed and compensated the physicians; required them to maintain hospital privileges and participate in hospital call responsibilities; and documented those obligations in their employment agreements, credentialing materials, and collective bargaining agreement. (Docs. 23-2, 23-3.) Their treatment of Plaintiff at TMC was performed pursuant to those employment obligations and furthered El Rio's provision of obstetrical and gynecological services. The physicians were not pursuing an independent course of conduct unrelated to El Rio's purposes merely because they treated Plaintiff at TMC. Rather, their hospital services were part of the work El Rio required them to perform as a condition of their employment.

Dr. Hernandez-Parkhurst likewise acted within the scope of her El Rio employment during the August 2 visit. She treated Plaintiff at El Rio OB/GYN Associates, provided gynecological care within El Rio's identified services, and was compensated by El Rio for that work. Nothing in the record suggests that she acted independently of El Rio or for a purpose unrelated to her employment.

Accordingly, Drs. Hernandez-Parkhurst, Woodard, and Rios acted within the scope of their El Rio employment when they provided the care at issue. The Court has considered coverage separately as to each physician and each treatment period alleged in the First Amended Complaint and concludes that all challenged care falls within § 233 coverage. There is therefore no basis to restore any physician as a defendant for a subset of Plaintiff's claims.

### III. Additional Discovery and Scope Hearing

The Court denies Plaintiff's requests for limited discovery and a § 233 scope hearing because the existing record is sufficient to decide coverage.

Plaintiff seeks additional information about TMC's call calendar and call coverage practices. (Doc. 25 at 10.) But § 6.6(e)(4)(ii) does not require proof that every alleged

negligent act occurred during a separately identified call shift. The relevant questions are whether TMC required periodic call coverage as a condition of admitting privileges and whether El Rio documented that obligation as a condition of the physicians' employment. The present record answers those questions.

The Court also does not rely on Exhibit 14 alone. The record includes El Rio's deeming and grant materials, employment and credentialing documents, the collective bargaining agreement, TMC's Medical Staff Bylaws, the agreements between El Rio and TMC, billing and compensation records, and declarations from El Rio officials and the treating physicians. Plaintiff's objections concern the interpretation and weight of that evidence, not facts requiring further development. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1166 (9th Cir. 2021) ("The lack of certain specific details goes to the weight of the testimony, not its admissibility.").

An evidentiary hearing is likewise unnecessary. Although the Court may hold a hearing to resolve a material factual dispute, a hearing is discretionary and is not required merely because the parties disagree about the evidence or its legal significance. *See Saleh v. Bush*, 848 F.3d 880, 892 (9th Cir. 2017); *Mansfield v. Pfaff*, 719 F. App'x 583, 585 (9th Cir. 2017). Because Plaintiff has not identified a disputed fact that would alter the § 233 analysis, a hearing would serve no purpose. *See Saleh*, 848 F.3d at 892.

Plaintiff's requests for additional discovery and a scope hearing are therefore denied.

**IV. Motion to Dismiss**

The Court will grant the United States' Motion to Dismiss because Plaintiff did not exhaust her administrative remedies before filing suit.

The United States "can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976). The FTCA waives the United States' sovereign immunity for torts committed by federal employees "under situations where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see Vacek v.*

*U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

Before bringing an FTCA action, a claimant must present the claim to the appropriate federal agency and either receive a final written denial or wait six months without a final disposition. 28 U.S.C. § 2675(a). The Ninth Circuit treats this exhaustion requirement as a mandatory, jurisdictional prerequisite to suit and strictly construes it. *Vacek*, 447 F.3d at 1250–51.

Plaintiff does not allege that she exhausted her administrative remedies. *See Brunson v. Kijakazi*, No. 21-16380, 2023 WL 166425, at *1 (9th Cir. Jan. 12, 2023) (affirming dismissal for lack of jurisdiction where the plaintiff failed to allege FTCA exhaustion); *Wiggins v. United States Gov't*, 859 F. App'x 52, 52–53 (9th Cir. 2021) (affirming the dismissal of a plaintiff's FTCA "claim for lack of subject matter jurisdiction because [he] failed to exhaust her administrative remedies"). She argues only that dismissal is premature because the Court first must determine whether the United States was properly substituted. (Doc. 17 at 1–2.) The Court has now determined that the physicians' treatment falls within § 233 coverage and that the United States was properly substituted. The FTCA therefore provides Plaintiff's exclusive remedy for those claims, and her failure to exhaust deprives the Court of subject matter jurisdiction.

Accordingly, the Court will grant the United States' Motion to Dismiss and dismiss without prejudice the claims for which the United States was substituted. *See Wilson v. Horton's Towing*, 906 F.3d 773, 783 (9th Cir. 2018) (holding that dismissal with prejudice was improper where the plaintiff could renew his claims after exhausting the appropriate remedies).

**V. Remaining State Law Claims**

After dismissal of the United States, only state law medical malpractice claims against the non-federal defendants remain. Because the action was removed from Pima County Superior Court based on the federal issues arising under § 233 and the FTCA, the only basis for retaining jurisdiction over the remaining claims is supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction

when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Ninth Circuit has "often repeated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of the factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Having considered judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction. This action remains at an early stage, the Court has not addressed the merits of the remaining medical malpractice claims, and those claims arise exclusively under Arizona law. Moreover, Plaintiff initially filed this action in state court, and it entered federal court only through removal. Accordingly, the Court will remand the remaining claims to Pima County Superior Court.

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's Motion to Remand with Associated Requests for Limited Discovery and a 42 U.S.C. § 233 Scope Hearing (Doc. 18) is **denied**.
2. The United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 4) is **granted**. Plaintiff's claims against the United States are **dismissed without prejudice**.
3. The Clerk of Court shall remand the remaining claims to Pima County Superior Court and close this case.

Dated this 11th day of August, 2026.

Jennifer G. Zipps
Chief United States District Judge